**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 05-2206**

———————

KANAWHA INSURANCE COMPANY,

Plaintiff - Appellant,

versus

EMPLOYERS REINSURANCE CORPORATION,

Defendant - Appellee.

———————

Appeal from the United States District Court for the District of
South Carolina, at Rock Hill.  Margaret B. Seymour, District Judge.
(CA-03-2765-0)

———————

Argued:  May 23, 2006                    Decided:  July 12, 2006

———————

Before WILKINS, Chief Judge, DUNCAN, Circuit Judge, and Joseph R.
GOODWIN, United States District Judge for the Southern District of
West Virginia, sitting by designation.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Howard Jonathan Bashman, Willow Grove, Pennsylvania, for
Appellant.   Jason A. Dunn, STINSON, MORRISON & HECKER, L.L.P.,
Kansas City, Missouri, for Appellee.  **ON BRIEF:** Kevin K. Bell,
ROBINSON, MCFADDEN & MOORE, P.C., Columbia, South Carolina, for
Appellant.   Pope D. Johnson, III, MCCUTCHEN, BLANTON, JOHNSON &
BARNETTE, L.L.P., Columbia, South Carolina; Bruce E. Baty, STINSON,
MORRISON & HECKER, L.L.P., Kansas City, Missouri, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Appellant Kanawha Insurance Company ("Kanawha"), an insurance company based in South Carolina, brought this diversity action against Appellee Employers Reinsurance Corporation ("ERC"), a reinsurance[1] company based in Kansas, raising claims for (1) breach of contract, (2) constructive fraud, (3) breach of contract accompanied by a fraudulent act, and (4) mutual mistake, unjust enrichment and rescission. The parties filed competing motions for summary judgment, and the district court entered judgment in favor of ERC on all of Kanawha's claims. Kanawha appeals that portion of the district court's ruling that addressed its breach of contract claim. We affirm the district court's order.


I.

Kanawha began issuing long term care ("LTC") insurance policies to consumers in 1994. LTC policies provide benefits to cover the cost of a nursing home stay or home health care in the

---

[1] "Reinsurance" means the ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to the reinsured, which is the ceding company, and in which contract the ceding company retains all contact with the original insured, and handles all matters prior to and subsequent to loss. The true reinsurer is merely an insurance company or underwriter which deals only with other insurance companies as its policyholders.

Carolina Nat'l Ins. Co. v. S.C. Tax Comm'n, 182 S.E.2d 878, 880 (S.C. 1971) (quoting 13 John Alan Appleman, Insurance Law and Practice, § 7681).

event the policyholder requires such services.  Kanawha charged its LTC policyholders level premiums.  In other words, the premiums remain constant throughout the life of the policy.

The premiums paid in the early years of a LTC policy with level premiums are generally more than sufficient to cover any expected benefit pay outs.  However, as the policy ages, the level premium becomes increasingly insufficient to cover the expected benefit pay outs, which increase over time.  South Carolina adopted regulations to address this insufficiency that require the insurer to establish active life reserves ("ALR"), also known as "contract reserves," that are funded with the premium over-sufficiencies in the early years of a level premium policy.  See S.C. Code Regs. 69-7 § IV.  The insurer can then use the ALR to cover the premium insufficiency in the later years of the policy.

In 1994, Kanawha entered into two reinsurance treaties[2] with ERC[3] to reinsure a portion of the risk Kanawha assumed under the LTC policies.  Under the "Quota Share Treaty," ERC reinsured 7.5% of the risk on each LTC policy for 7.5% of the premium Kanawha received.  The treaty required ERC to maintain ALR for the risk it assumed, thereby shifting responsibility for that portion of the

---

[2]A contract for reinsurance is commonly referred to as a "treaty."

[3]Kanawha also entered into two identical reinsurance treaties with Cologne Life Reinsurance Company, neither of which are at issue in this appeal.

state mandated ALR from Kanawha to ERC.  The treaty allowed either party to terminate the agreement as to new business and then allow the ALR to expire as the corresponding in-force policies expired. The Quota Share Treaty also provided that Kanawha could cancel or re-capture the in-force business and, in such event, obligated ERC to return the corresponding ALR to Kanawha.

Under the second agreement, the "Excess Treaty," ERC agreed to reinsure 42.5% of the LTC risk for any benefits paid for greater than two years in return for 18% of the premiums Kanawha received. The Excess Treaty specifically disclaimed ERC's obligation to maintain ALR for its risk under the treaty.  The Excess Treaty provided that either party could cancel the treaty upon notice and, in such event, only obligated ERC to return any unearned reinsurance premiums.  The Excess Treaty did not require ERC to pay any money upon termination to fund or otherwise compensate Kanawha for ALR.

It is undisputed that the two treaties were negotiated at arm's length by the parties and reviewed by their counsel prior to execution.  Kanawha readily admits that it signed the Excess Treaty under the assumption that "ERC would agree to make the Excess treaty guaranteed renewable."  J.A. 34a.  Kanawha believed that such an agreement would negate the risk it faced because of the ALR disclaimer.  As the treaty was written, ERC could unilaterally terminate the agreement without returning any monies to Kanawha to

fund the portion of the state-mandated ALR that corresponded to the risk ERC assumed under the treaty.

Between 1994 and 2000, Kanawha asked ERC to modify the Excess Treaty in relation to the ALR disclaimer on numerous occasions. ERC never agreed to any such modification. In 2000, ERC cancelled the Excess Treaty and returned the unearned insurance premiums to Kanawha, as required by the Excess Treaty. Kanawha demanded that ERC also transfer the ALR to it. ERC had established no ALR and refused to transfer any monies to Kanawha beyond the unearned reinsurance premiums. According to Kanawha, this allowed ERC to retain $2,000,000 in premiums paid by Kanawha that ERC should have used to create ALR for its portion of the risk under the Excess Treaty.

## II.

In its motion for partial summary judgment and in response to ERC's motion for summary judgment, Kanawha argued that ERC breached the Excess Treaty by failing to maintain ALR and return such monies to Kanawha when ERC cancelled the treaty. This argument flowed from Kanawha's contention that the ALR disclaimer in the Excess Treaty was unenforceable because it violated South Carolina law, primarily S.C. Code Regs. 69-7 § V.[4] Kanawha argued that section

_____

[4]This regulation provides:

Increases to, or credits against reserves carried,

6

V required reinsurers to establish ALR when reinsuring risk on LTC policies funded with level premiums.

The district court rejected this argument. It held that section V "cautions [a] ceding insurer that with respect to calculating credit for insurance on a financial statement, see S.C. Code Regs. 69-53, minimum reserve standards must be protected." J.A. 1363a. The district court further held that it "discern[ed] nothing in Regulation 69-7 that would restrict a [sic] ERC and Kanawha from negotiating responsibility for the ALR obligation arising from LTC policies sold at a level premium." Id. On that basis, the district court held that the ALR disclaimer in the "Excess Treaty is not violative of South Carolina law or public policy" and, therefore, was enforceable. Id. Because ERC had no obligation to do so, the district court concluded that ERC did not breach the Excess Treaty by not establishing ALR or returning monies to Kanawha at termination to fund ALR.

## III.

On appeal, Kanawha raises the same arguments as in the district court, which comprehensively and correctly considered and

---

arising because of reinsurance assumed or reinsurance ceded, must be determined in a manner consistent with the[] minimum reserve standards [of S.C. Code Regs 69-7] and with all applicable provisions of the reinsurance contracts which affect the insurer's liabilities.

S.C. Code Regs. 69-7 § V.

7

rejected them.   Upon review of the parties' briefs and consideration of their oral arguments, it is hereby ordered that the order under review is affirmed on the basis of the well-reasoned opinion of the district court.


<u>AFFIRMED</u>